former ruling, without turning the plaintiff out of court. This testimony was not strictly regular, but the defendant company, having objected to and excluded the best evidence, cannot now be heard to complain that secondary evidence was received. Upon the whole, we think a correct result was reached, though not by the most direct path.

Judgment affirmed.

---

## J. D. WEAVER ET AL. v. SAMUEL ADAMS.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS OF LEHIGH COUNTY.

Argued Febuary 7, 1890—Decided February 17, 1890.

(*a*) The plaintiffs in assumpsit showed that they had confessed to the defendant a judgment absolute for an amount certain, in consideration of the defendant's parol agreement to sell plaintiffs' property, pay all their debts and convey certain real estate to them, which agreement he had refused to perform :

1. In such case, the judgment remaining unopened and unreversed, the plaintiffs were estopped from alleging that it did not represent an actual indebtedness evidenced by it, and it was therefore not error to enter judgment of compulsory nonsuit.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 212 January Term 1890, Sup. Ct.; court below, No. 7 June Term 1888, C. P

On April 20, 1888, Jacob D. Weaver and Milton D. Weaver brought assumpsit against Samuel Adams. The defendant pleaded non-assumpsit.

At the trial on September 9, 1889, a case was shown sufficiently appearing in the first opinion of the court below, infra. See, also, Adams v. Kuehn, 119 Pa. 76. At the close of the testimony, the court, ALBRIGHT, P. J., on motion of defendant, entered judgment of nonsuit, with leave, etc.

On October 29, 1889, the rule to show cause why the judg-

ment of nonsuit should not be vacated having been argued, the court, ALBRIGHT, P. J., filed the following opinion:

Upon this motion to take off the nonsuit entered by the court, it must be taken that the facts which could have been found properly from the plaintiffs' evidence, exist.

Plaintiffs' evidence tends to show that prior to August 12, 1884, the plaintiffs, Jacob and Milton Weaver, had associated with them in business Thomas Weaver, who was a brother-in-law of Adams, the defendant. Thomas was a silent partner. He indorsed notes of the firm of Weaver Brothers, (composed of Jacob and Milton, and it included at some time or to some extent Thomas also,) which notes were discounted by banks. Thomas appropriated firm moneys to himself. Upon the discovery of that, he ceased to be interested in the business as a partner. Adams then took the place of Thomas as indorser of the notes of the firm, composed of the plaintiffs, Jacob and Milton.

The amount Adams thus became liable for was, as between the Weavers, the debt of Thomas, by reason of the latter's appropriation to himself of partnership money, and this Adams knew. To secure himself, Adams received from Thomas, property of the latter. Adams held the confessed judgment of Jacob and Milton for $11,500 as security for his indorsements. He had indorsed notes for about $32,000.

On August 12, 1884, Jacob and Milton Weaver, and Adams, met. The Weavers were insolvent. They proposed to make an assignment for creditors. Adams requested them, instead, to confess a judgment to him and to transfer to him their credits on their books and their moneys in bank. They declined to accede to the request, unless Adams would promise to do certain things. Then Adams promised that if they would give him a judgment for $25,500, making with that he had already, $37,000, he would pay all the creditors of the plaintiffs, Jacob and Milton, " and give them a free name," first paying Wartman, Stevens, Rebecca Weaver and certain guardian money, the amount of certain goods recently shipped to Thomas Weaver at Adams's request, and that he would transfer to the wives of Jacob and Milton the title to certain houses owned by Jacob and Milton, give Jacob and Milton the grocery store, would let that in their name (not levy on it), and as to the main (the

cigar) business, he would "merely close it out one day and the next you get possession again, and, until a couple of weeks is round and the creditors paid off, you shall have it the same as before."

Relying on this promise, the plaintiffs in this action, Jacob and Milton Weaver, signed and delivered to Adams their judgment note for $25,500, and transferred their books of accounts and gave a check for a balance due them in bank. Said promise was the inducing cause of the confession of the judgment. Thereupon, Adams entered the judgment note last named, issued execution thereon, and at the sheriff's sale himself bought all the personal and real estate of the plaintiffs. At this time the Weaver Brothers, Jacob and Milton, owed to Stevens about $900; to Wartman $700 or $800; to Rebecca Weaver about $390; to Hamburger & Co. about $600; to Kuehn $336; to First N. Bank of Camden $600; to Newman & Co. $1,500; to Charles Ziegenfuss, who held a judgment, $8,500. The guardian money referred to was about $500; the account for the goods shipped to Thomas was probably $12,000.

Adams, by transfer of the goods bought at the sheriff's sale, or otherwise, satisfied the claims of Stevens, Rebecca Weaver and Ziegenfuss. He refused to pay the others, or to pay the debt Thomas owed, or to leave or give to Jacob or Milton or their wives any property. For the breach of the promise inducing the confession of the judgment, this action was brought by the Weaver Brothers.

The amount realized by the sheriff, together with the money in bank transferred, and what was collected of the accounts, was less than the amount of Adams's judgments against the Weavers, and less than the notes Adams had indorsed. It was less than the last judgment for $25,500. What Adams realized on, or what was the value of the property transferred to him by Thomas Weaver, has not been shown. One of the plaintiffs testified that the goods bought by Adams at the sheriff's sale were worth much more than what they were struck down for. Upon these facts, or facts resembling them, it was decided that Kuehn, one of the creditors of the Weavers, could not recover against Adams: Adams v. Kuehn, 119 Pa. 76. The grounds of that decision are, that Kuehn was a stranger to the promise; that it was made to the Weaver

Opinions of Court below.

Brothers, from whom the consideration moved and who were the parties to be benefited by its performance; and that to sustain a suit against Adams by each creditor of the Weavers, and by the latter, for what was to be given to them directly, would be inconvenient, by reason of the multiplicity of the actions.

I think the plaintiffs cannot recover for several reasons. In the first place, the judgment cannot be inquired into in this action. It must be accepted as verity. It evidences an indebtedness of $25,500, at the time of its entry. What, if anything, is or was due thereon could be tried by a jury in that action, upon an opening of the judgment or in an issue to determine what had been paid; or, the judgment could be pronounced fraudulent as to creditors in an issue between creditors and the plaintiff. But upon no theory could a jury be permitted, in an action brought by the defendants against the plaintiff in that judgment, to find that the judgment is not true, or what amounts to the same thing, that the plaintiff therein must turn over to the defendants the fruits of an execution thereon. Nor could the jury be suffered to find that Adams must account for the value of the goods he bought at the unimpeached sheriff's sale, because they were worth more than the price they were knocked down at.

In the next place, in this action by the Weaver Brothers, the promise to pay their other creditors, in the absence of evidence that Adams realized enough to pay himself, is not enforceable for want of consideration. In an action by one of the creditors of the Weavers against Adams, it might be held that he was a trustee for such creditors: Hind v. Holdship, 2 W. 104; Roth v. Barner, 2 Penny. 214, as explained in Temple v. Baker, 125 Pa. 634. But it cannot be said that if there was a trust, its breach gave a right to recover to the Weavers. They are not the beneficiaries of the trust, strictly. They do not even stand in the shoes of their creditors in respect to Adams, for it does not appear that they paid the creditors which Adams failed to satisfy. And if they were to recover, it would not be necessarily for the benefit of their creditors. They might and most probably would out of the fruits of the judgment in their favor pay their creditors, but they would not hold the money impressed with a trust.

A defendant in an unreversed and unopened judgment cannot recover a judgment against the plaintiff therein exclusively upon matters involved in the first judgment, at least not so long as the original judgment has not been satisfied by money made on executions or payments otherwise made. In the course of the opinion in Adams v. Kuehn, Mr. Justice WILLIAMS says of the alleged promise of Adams to pay the debts of the Weavers, etc.: " The beneficiary is not the original creditor who is a stranger to the contract and the consideration, but the original debtor who is a party to both, and the right of action is in him alone." If this court believed that the Supreme Court had decided that Jacob and Milton Weaver have a cause of action, there would be no thought of hesitating to obey that decision. But that court decided only that Kuehn had no cause of action. It does not accord with this court's idea of its duty, to seize upon a passing expression in the opinion of the higher court, as a ground for sustaining an action which that court did not decide to be existing, and which this court believes does not exist.

On November 18, 1889, the motion to take off the nonsuit was reinstated, and on December 19, 1889, after a re-argument, the following opinion was filed, ALBRIGHT, P. J.:

A re-argument of the motion to take off the nonsuit was asked because of the decision of Stark's App., 128 Pa. 545, published since the overruling of the motion. The judgment for $25,500, confessed by the Weavers to Adams, is an absolute judgment. If the plaintiffs' case is to be submitted to a jury, one of the questions which they must be requested to determine will be, whether that judgment shall be taken to be affected by the contemporaneous parol agreement alleged by the plaintiffs in this action; that is, whether said judgment shall be regarded as if it contained a condition that Adams, the plaintiff therein, shall pay all the creditors the defendants therein, the Weaver Brothers, had at the time of its confession, pay to the Weaver brothers a debt then owing by Thomas Weaver, and convey and transfer to them certain real and personal property. The plaintiffs in this action allege that a promise to do so was made by Adams, and was the inducing cause of the giving of the judgment. There is evidence from

which a jury could find that there was such a promise, and that it was the consideration in part of the judgment.

In Stark's Appeal it was decided that Stark, the defendant in two judgments confessed by him to Jacob Griel, had a right to show that the judgments were not given for an absolute debt, but to secure Griel from the effect of indorsements for Stark's benefit, and that in fact there were no such indorsements when the judgments were enforced. John F. Griel, who had acted as attorney in fact for Jacob Griel in issuing execution, was also, at the time the controversy arose, executor of Jacob, who was then deceased, and assignee for the benefit of creditors of Stark. Upon his account as assignee the contest arose. Each of the two judgments against Stark was entered upon a bond with warrant as collateral security " to indemnify said Jacob Griel, Sr., for all indorsements now made, or hereafter to be made, by Jacob Griel, Sr., for said Joseph Stark, and all renewals of the same, and to indemnify said Jacob Griel for being surety of any kind now or hereafter." Upon the face of the record the defendant in the judgments did not owe the plaintiff the sums for which the judgments were given, but the plaintiff by virtue of the judgments had security for whatever he might be liable for on the defendant's behalf. Whatever he was liable for, necessarily had to be shown aliunde.

To admit parol evidence to show that Jacob Griel was not liable as surety for Stark, was quite a different thing from permitting the Weavers in this action to prove by parol that the judgment in Adams's favor is to be read as if it contained an obligation on Adams's part to pay debts which the Weavers owed to other parties, and to perform the other conditions above set forth. In the former case, the evidence ruled to be admissible was upon the question whether anything was due according to the terms of the judgments. In the case in hand, to submit the question above stated to the jury, would be asking them to determine whether an absolute judgment is to be accepted as such, or, whether there is to be superadded a contract that the plaintiff therein shall pay money for the defendants' benefit; and such issue would be in a collateral proceeding, in this action of assumpsit brought by the defendants in the judgment against the plaintiff therein. For such a

course there is no warrant in the law.   It would be an inquiry into the validity of a judgment in a collateral proceeding. " It is settled, if anything can be, that an erroneous judgment or irregular execution not void can be set aside only by direct and appropriate action by parties having an interest in the same, and not by collateral attack under cover of any other proceedings : " THOMPSON, C. J., in Wilkinson's App., 65 Pa. 189.

If the plaintiffs' allegation is true a remedy for their wrongs ought to exist.   But the court remains of the opinion that the forms of law would be violated by permitting a recovery in this action.

Thereupon the plaintiffs took this appeal, specifying that the court erred : 1. In entering the judgment of nonsuit.   2. In discharging the rule to vacate said judgment.

*Mr. C. J. Erdman* (with him *Mr. Milton C. Henninger* and *Mr. Arthur G. Dewalt*), for the appellants :

Counsel cited : Adams v. Kuehn, 119 Pa. 76 ; Stark's App., 128 Pa. 545 ; Shenk's App., 33 Pa. 371 ; Ayers's App., 28 Pa. 179.

*Mr. Edward Harvey*, for the appellee.

Counsel cited : Bank v. Munford, 3 Gr. 232 ; Wilkinson's App., 65 Pa. 189 ; Yaple v. Titus, 41 Pa. 195 ; Second N. Bank's App., 96 Pa. 460 ; Lowber's App., 8 W. & S. 387 ; McFarlane v. Warfflein, 100 Pa. 519 ; Martin v. Berens, 67 Pa. 460 ; North & West Br. Ry. Co. v. Swank, 105 Pa. 555.

PER CURIAM :

The learned judge below has given ample reasons for directing this nonsuit.   We need not add to what he has so well said.

Judgment affirmed.